DONALD RUSSELL, Plaintiff-Appellee, *v.* LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.,* Defendants-Appellants.

(No. 55092;

First District—July 15, 1971.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen and Gayle F. Haglund, Assistant Corporation Counsel, of counsel,) for appellants.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

The City of Chicago appeals from a judgment of the Circuit Court.

The Mayor of the City of Chicago in his capacity as Local Liquor Commissioner revoked the local liquor license of the licensee Donald Russell for the premises located at 5431 S. Ashland Avenue in Chicago. The order of revocation was based on a finding that Russell was a licensee in name only and was acting as a subterfuge for the real party in interest, Frank Wilson, who previously had a liquor license revoked. The order of revocation subsequently was affirmed by the License Appeal Commission. The licensee then filed an administrative review action in the Circuit Court. The court entered judgment reversing the order of revocation, and this appeal follows.

The City first contends that a revocation is justified where the real party in interest has previously had a liquor license revoked. It then argues that the finding of the local liquor commissioner that Wilson was the real party in interest and that Russell acted as a subterfuge was not against the manifest weight of evidence.

Russell has filed an appearance, but has not filed an answering brief in this court. It has been held that a reviewing court may reverse the judgment without further explanation when an appellee fails to submit an answering brief. (*541 Briar Place Corp. v. Harman* (1964), 46 Ill.App.2d 1, 196 N.E.2d 498.) However, as we have done in the past, this court has examined the record to determine the merits of the appeal. (See *Perez v. Janota* (1969), 107 Ill.App.2d 90, 246 N.E.2d 42; *Werbeck v. Werbeck* (1966), 70 Ill.App.2d 279, 217 N.E.2d 502.) The following transpired at the revocation hearing before the deputy local liquor commissioner.

Officer John P. McCarthy of the Chicago Police Department testified for the City that he made an investigation of the liquor license of the tavern in question. In connection with that investigation, he had conversations with an ex-bartender, Eugene Maddox, and with George McGehee, owner of the premises. Counsel for the license objected to the introduction of such conversations on the grounds that they constituted hearsay. The assistant Corporation Counsel first stated that he was presenting the conversations as offers of proof and the deputy hearing officer agreed that he might. The assistant Corporation Counsel then asked that they be admitted as exceptions to the hearsay rule, and again the hearing officer apparently agreed. Over vigorous objection, McCarthy was permitted to testify that Maddox told him that when he had worked as a bartender at the tavern in question, he had worked for Wilson. McCarthy was also permitted to testify that McGehee, the owner of the premises, had informed him that most of the time Wilson gave him the rent. McCarthy further testified that in conversation with Russell, Russell said that he received twenty percent of the profits from Wilson.

George McGehee, an accountant and owner of the premises on which the tavern was located, testified for the City and denied having told McCarthy that most of the time Wilson paid the rent. He stated that the lease for the tavern originally was held by Anthony Braskich. Braskich became ill, and asked McGehee if Donald Russell could sublet the tavern. Russell took over the operation of the tavern around the beginning of 1968 and had run it for approximately fourteen months. During that time, Russell or a nephew of Russell's had given him the rent money about ten times, while Wilson had given it to him about four times.

Donald Russell was called as a witness by the City and testified that he had operated the tavern since 1967. He owned the tavern for about a year before he met or knew Wilson, whom he hired as a bartender in November, 1968. Russell had also operated the tavern in question for about a year before Wilson's license had been revoked at another address. Russell denied telling Officer McCarthy that he received twenty percent of the profits from Wilson; in fact, he paid Wilson 20% of the profits, and that ranged from $80 to $150 per week. Russell himself took $200 a week out of the tavern. For several months previous to the hearing, running the tavern was Russell's only occupation, and he worked there from 10:00 A.M. to 6:00 P.M. Wilson or another bartender, Bill Cummings, worked from 6:00 P.M. to 2:00 A.M., and he had a man sleep in the back of the tavern until his 10:00 A.M. arrival. The bartenders were in charge when he was not present. Most of his business was handled in cash, and his bookkeeping was done by A.A. Advance. Russell had paid Braskich $3000 for the tavern, fixtures included. He entered a sublease, a contract for the fixtures, and a contract for the business with Braskich. These three documents, along with the receipts for the fixtures and liquor stock, were introduced in evidence. At the time Russell applied for a liquor license, he supplied verification to the City that the tavern investment was out of his personal funds. An application for a tobacco license, which had the word "Frank" crossed out and bore the signature of Donald Russell was introduced in evidence. Russell stated that Wilson signed the application in Russell's name with his approval. Russell's nephew had signed one other license application, also with his approval. All of the other license applications had been signed by Russell.

At the conclusion of all the evidence, the assistant Corporation Counsel requested a continuance so that the City might make a further investigation. However, the hearing officer stated that he wished to wind up the matter, and the City withdrew its request for continuance. The hearing officer took the matter under advisement, and the order of revocation was subsequently entered.

■■ We believe that the trial court correctly held that the finding of the

local liquor commissioner that Wilson was the real party in interest and that Russell acted as a subterfuge was against the manifest weight of evidence. Consequently, it is unnecessary to consider the City's first argument that a revocation is justified where the real party in interest has previously had a liquor license revoked.

■■■ The Administrative Review Act, (Ill. Rev. Stat. 1967, ch. 110, sec. 275(2)), provides:

> "Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him."

Where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceedings is not prejudicial error. (*Schwartz v. Civil Service Com. of City of Chicago* (1954), 1 Ill.App.2d 522, 117 N.E.2d 874.) However, the rule against hearsay evidence is basic and fundamental, and not merely a technical rule of evidence. Such evidence is not admissible in an administrative hearing. (*Fantozzi v. Board of Fire & Police Commrs.* (1962), 35 Ill.App.2d 248, 182 N.E.2d 577; affirmed 27 Ill.2d 357, 189 N.E.2d 275 (1963).) It was error for the local liquor commissioner to permit Officer McCarthy to testify as to his conversations with McGehee and Maddox. These conversations plainly constituted hearsay testimony, and should not have been allowed. The testimony that Maddox said he worked for Wilson was particularly prejudicial, crucial as it was to the issue as to whether Russell was a subterfuge for Wilson. The record therefore must be examined without considering the hearsay testimony.

■■■ Where the administrative order is contrary to the manifest weight of evidence, it is the duty of the reviewing court to affirm the action of the trial court in setting it aside. (*Dorfman v. Gerber* (1963), 29 Ill.2d 191, 193 N.E.2d 770.) We recognize the well established principle that the findings and conclusions of an administrative agency are *prima facie* true and correct. However this court is required to consider the entire record and to determine whether the trial court correctly determined that the commissioner's findings were against the manifest weight of evidence. See *Gasparas v. Leack* (1968), 93 Ill.App.2d 99, 235 N.E.2d 359.

Once the incompetent hearsay testimony is disregarded, the record reveals the following evidence to have been adduced. McGehee, the owner of the premises, testified for the City that upon the illness of the previous

owner, Russell took over and operated the tavern. Documentary evidence disclosed that Russell had entered into a contract and lease with the previous owner, and had paid $3000 for the tavern, including fixtures and stock. There was further undisputed testimony that, in his original application for a liquor license, Russell had satisfied the City that the source of his investment in the tavern was his own funds. More importantly, it was uncontradicted that Russell had operated the tavern for a year before Wilson's liquor license at another location was revoked, and that Russell had never known or met Wilson until he hired him as a night bartender, also approximately a year after purchasing the tavern. In support of the commissioner's finding, there was only McCarthy's testimony that Russell had told him that he received 20% of the profits from Wilson, plus the fact that, with Russell's permission, Wilson had signed Russell's name to a tobacco license application. In our view, the trial court correctly held that the finding of the local liquor commission was against the manifest weight of the evidence. We also believe that the City's request of the commissioner for a continuance, made after all the evidence was presented, was a recognition of the insufficiency of its proof.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY and McGLOON, JJ., concur.