RUTH DANIELS, Plaintiff-Appellant, *v.* THE RETIREMENT BOARD OF
THE POLICEMAN'S ANNUITY AND BENEFIT FUND, CITY OF
CHICAGO, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 81-1127

Opinion filed May 7, 1982.

Sheldon Hodes, of Chicago, for appellant.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and
Cheryl L. Smalling, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a judgment on administrative review affirming a decision of the Retirement Board of the Policeman's Annuity and Benefit Fund of Chicago (Board), which denied widow annuity benefits to her. She contends that (1) the evidence did not rebut the presumption that a divorce occurred between her deceased husband and his first wife, defendant Marion Daniels Robinson; and (2) she is a putative spouse under section 305 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1979, ch. 40, par. 305).

The record discloses that plaintiff and defendant filed claims for widow annuity benefits with the Board following the death in 1975 of James Daniels (deceased), a member of the Chicago Police Department. Plaintiff also sought a child annuity benefit for her son, Darryl Daniels, whose father was the deceased. It appears that deceased and defendant were married in 1945 in Arkansas, with no children born or adopted as a result of that marriage. Thereafter, defendant married Henry Robinson in 1949, and deceased married plaintiff in 1949. Copies of all marriage certificates were received in evidence.

At the Board hearing, defendant testified that she never received notice that deceased had sought or obtained a divorce from her, and that during her marriage to Henry Robinson deceased came to her residence in Arkansas and told her that he had never divorced her, that she was still his wife, and that her marriage to Henry Robinson was not legal. Della Daniels, mother of deceased, testified that she had always resided with deceased except for two years in the late 1950's; that he never told her of divorcing defendant; that the last time she asked him whether he was going to divorce defendant, he replied that "Marion is forever going to be my wife"; that plaintiff knew he had not divorced defendant; and that he "told everybody he wasn't going to divorce his wives. He only married those girls to certify they are mothers, and they know it." Plaintiff testified that she was married to deceased and, in support thereof, produced her marriage certificate and presented an assignment of the beneficial interest in a certain land trust identifying her as the wife of deceased, which document was signed by Della Daniels. However, no evidence of any divorce proceeding terminating the marriage of deceased and defendant was presented by plaintiff.

Concluding that the marriage between deceased and defendant had not terminated in divorce and that she was the widow of deceased at the time of his death, the Board ordered that widow annuity benefits be awarded to defendant, with child annuity benefits to Darryl.

On administrative review, plaintiff requested only that the grant of

benefits to defendant be reversed and that they be awarded to her. The circuit court affirmed the decision of the Board, and later it denied plaintiff's post-trial motions to vacate its affirmance and to allow a recovery of annuity benefits to her as a putative spouse under section 305 of the Act. This appeal followed.

OPINION

Plaintiff first contends there was an absence of admissible evidence to rebut the presumption that there was a divorce between deceased and defendant. She maintains that the only evidence in rebuttal of the presumption was the inadmissible hearsay testimony of defendant concerning a conversation with deceased in which he told her that they were not divorced, and the testimony of Della Daniels to the effect that deceased had never told her of any proceedings instituted by him to divorce defendant. We find this contention to be without merit.

It was stated in *Sparling v. Industrial Com.* (1971), 48 Ill. 2d 332, 336-37, 270 N.E.2d 411, 413, that:

"[I]n the absence of evidence to the contrary, we will presume a previous divorce in order to sustain a second marriage. [Citations.] We have also said, however, that the presumption may be rebutted by evidence which, standing alone, affords reasonable grounds for concluding that no divorce has been secured. [Citations.]"

In *Sparling*, the deceased married his first wife in 1954 and his second in 1956. The first wife testified that although preparations for divorce proceedings had been made, a divorce had never taken place and that she had never instituted a divorce action and knew of none brought against her by deceased. Finding that deceased had lived intermittently with his first wife and that there was no evidence of a divorce, the court held the first wife was entitled to receive the contested benefits, concluding that the presumption of a divorce between the first wife and deceased was rebutted.

Similarly, in the instant case, it appears to us that the evidence was sufficient to rebut any presumption that deceased and defendant were divorced. Defendant testified that she married deceased in 1945 and introduced her marriage certificate in support thereof; that after her marriage in 1949 to Henry Robinson, the deceased—who was then living in Chicago—visited her in Arkansas, where he informed Robinson and her that their marriage was not legal because he (deceased) and she had not been divorced. Defendant further testified that she did not sign divorce papers or receive a divorce decree, and that shortly before the death of deceased in 1975 he told her that she was still his wife.

Corroborative of defendant to some extent was the testimony of Della Daniels, who stated that except for a period of about two years in

the late 1950's she maintained her residence with the deceased and, although she was familiar with his personal life, he never told her that he had divorced defendant and said that he was not going to divorce any of his wives. She also testified that plaintiff was aware that no divorce had occurred between deceased and defendant.

■■■ As in judicial proceedings, hearsay evidence is generally inadmissible in administrative hearings unless it satisfies the requirements of an exception to the rule excluding hearsay. (*Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745; *Baehr v. Health & Hospital Governing Com.* (1980), 86 Ill. App. 3d 43, 407 N.E.2d 817; *Spaulding v. Howlett* (1978), 59 Ill. App. 3d 249, 375 N.E.2d 437; also see Ill. Rev. Stat. 1979, ch. 110, par. 275(2).) In the present case, contrary to plaintiff's position, it appears that the testimony in question, although hearsay, was admissible under the exception for statements of personal or family history. This exception requires that the declarant be dead, the declaration be made before the controversy arose, and the declarant be related by blood or marriage to the family to which the declarations refer. (*Welch v. Worsley* (1928), 330 Ill. 172, 161 N.E. 493; *Sugrue v. Crilley* (1928), 329 Ill. 458, 160 N.E. 847, *cert. denied* (1928), 278 U.S. 616, 73 L. Ed. 539, 49 S. Ct. 20.) The principle underlying this exception is that as to events generally regarded as important in the family life, statements by family members are likely to be objective, sincere, and reliable. As stated in Wigmore: "This certainly includes the fact and date of birth, marriage, and death, and the fact and degree of relationship * * *." (5 Wigmore, Evidence sec. 1500 (Chadbourn rev. 1974).) In our view, the testimony of defendant and that of Della Daniels complied with those requirements. Moreover, insofar as the record indicates, Della Daniels was a neutral party, and plaintiff does not specifically assert that her testimony was inadmissible but only that it "could be construed to be inadmissible hearsay."

■■ Additional corroboration of the testimony of defendant and Della Daniels comes from the Board's inability to locate a divorce decree relating to defendant and the deceased after a search of the records in Cook County, Illinois, and Phillips County, Arkansas—their two domiciles. We note that in *Sparling*, the court records were apparently not checked for a divorce decree, yet the first wife was awarded benefits based solely upon her testimony. Furthermore, like the first wife in *Sparling*, defendant here testified that the deceased maintained contact with her and knew where she lived. The court in *Sparling* stated that the deceased's knowledge of his first wife's residence, together with the testimony of the first wife that she received no notice and had no knowledge of a divorce action, "afforded reasonable grounds for believing that no divorce had been obtained by the deceased." (48 Ill. 2d 332, 337, 270 N.E.2d 411, 414.) We believe the evidence supporting defendant's posi-

tion here is stronger than that of the first wife in *Sparling* and that it sufficiently rebuts the presumption that there was a divorce between defendant and deceased. Therefore, we find that the circuit court correctly ruled that the decision of the Board to award the annuity to defendant was not against the manifest weight of the evidence. See *Hodges v. Board of Trustees* (1979), 73 Ill. App. 3d 978, 392 N.E.2d 417; *Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill. App. 3d 812, 306 N.E.2d 906.

We also reject plaintiff's contention that she is entitled to the annuity as the putative spouse of deceased based on section 305 of the Act. (Ill. Rev. Stat. 1979, ch. 40, par. 305.) That section provides in relevant part:

"Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse * * *. If there is a legal spouse or other putative spouse, rights acquired by a putative spouse do not supersede the rights of the legal spouse or those acquired by other putative spouses, but the court shall apportion property * * * among the claimants as appropriate in the circumstances and in the interests of justice."

The rights of a putative spouse are conferred upon anyone "who has gone through a marriage ceremony and cohabited with another in the good faith belief that they were married to each other." (Ill. Ann. Stat., ch. 40, par. 305, Historical and Practice Notes, at 97 (Smith-Hurd 1980).) While the rights conferred are those of a legal spouse, they "are limited to the period in which the party had no knowledge of the invalidity of the marriage," and if there are conflicting claims as between a putative spouse and a legal spouse, a fair and efficient apportionment of property should be made, which is likely to be in accordance with the length of time each spouse cohabited with the common partner. Ill. Ann. Stat., ch. 40, par. 305, Historical and Practice Notes at 97-98 (Smith-Hurd 1980).

■■ Plaintiff first presented this claim on administrative review as a post-trial motion and, since she did not raise it before the Board, she is foreclosed from asserting it on appeal to this court. (*Robert S. Abbott Publishing Co. v. Annunzio* (1953), 414 Ill. 559, 112 N.E.2d 101; *Village of Cary v. Pollution Control Board* (1980), 82 Ill. App. 3d 793, 403 N.E.2d 83; also see Ill. Rev. Stat. 1979, ch. 110, par. 274.) Moreover, it appears that plaintiff acquired no such rights, since the evidence discloses that she knew deceased and defendant had not been divorced and was thus aware that the marriage between her and the deceased was not legal. There was, in addition, the testimony from Della Daniels that deceased said he had

not divorced defendant. Plaintiff did not negate that testimony, and nowhere else in the record does it appear that she denied knowing that defendant and deceased had not been divorced. In light of plaintiff's knowledge that she was not legally married, she did not acquire putative spouse status under section 305.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.